1
2
3
4                           UNITED STATES DISTRICT COURT
5                         NORTHERN DISTRICT OF CALIFORNIA
6

7    ANNA M. SANZONE-ORTIZ,                    Case No.  15-cv-03334-WHO
8              Plaintiff,
                                               **ORDER REGARDING MOTION TO**
                                               **COMPEL ARBITRATION**
9         v.
                                               Re: Dkt. No. 14
10   AETNA HEALTH OF CALIFORNIA, INC.,
     et al.,
11             Defendants.
12                                **INTRODUCTION**

13         This case concerns a challenge under the Employee Retirement Income Security Act of

14   1974 ("ERISA") to defendants Aetna Health of California, Inc. ("Aetna California") and Aetna,

15   Inc.'s healthcare plan.  Plaintiff Anna Sanzone-Ortiz ("Ortiz") alleges that defendants' "benefits

16   cap" for the treatment of autism violates the Parity in Mental Health and Substance Use Disorder

17   Benefits provision of ERISA and California's Mental Health Parity Act.  The question I must

18   decide is whether to enforce the arbitration agreement that Ortiz signed.  Because her challenge is

19   statutory, Ortiz argues that ERISA does not require her to arbitrate her claims.  But she

20   misunderstands precedent on this issue and she is bound by the arbitration agreement she signed.  I

21   GRANT defendants' motion to compel arbitration.

22                                **BACKGROUND**

23         Oritz is a plan participant under an ERISA-governed health benefit plan sponsored by her

24   employer and insured by Aetna California.  Compl. ¶6.  Ortiz's son, a beneficiary under the plan,

25   has been diagnosed with autism.  His treating provider recommended 36 hours per week of

26   Applied Behavior Analysis ("ABA") treatment.  Compl. ¶6.  Ortiz sought coverage for 36 hours of

27   ABA therapy, but Aetna California authorized only 20 hours, stating that "[m]edical necessity for

28   more than 20 hours is not met."  Compl. ¶29.  Ortiz internally appealed the decision, which Aetna

United States District Court
Northern District of California

California affirmed on March 11, 2015.  Compl. ¶30.  That same day, Ortiz appealed the decision to the California Department of Managed Health Care, which increased her son's coverage to 25 hours per week.  Compl. ¶31.

Ortiz alleges Aetna California applies, and is subject to, a 12-page guideline written by Aetna Inc. that "would consider no more than 20 hours per week for 60 consecutive days" of therapy.  Compl. ¶4.  She asserts that Aetna California's original decision to cover only 20 hours per week of her son's therapy was based on this 20 hour "benefit cap," which she contends violates the Mental Health Parity and Substance Use Disorder provision of ERISA, 29 U.S.C. § 1185a, and California's Mental Health Parity Act, codified at California Health & Safety Code § 1374.71.  Compl. ¶¶42-59.

Ortiz brings her complaint as a class action under Federal Rule of Civil Procedure 23 on her own behalf and on behalf of two classes.  The California Class is defined as:

> All current and former participants and beneficiaries of any ERISA-governed Aetna Health of California health plan who were denied benefits for ABA treatment for autism based on the 20-hour limitation at any time after June 30, 2011, excluding officer, directors, and managing agents of either Defendant.

Compl. ¶33.  The National Class is defined as:

> All current and former participants and beneficiaries of any ERISA-governed health plan that has adopted the Aetna, Inc. 12-page set of guidelines for determining coverage limits for ABA treatment, who have been denied benefits for ABA treatment for autism based on the 20-hour limit since June 30, 2011, excluding officer, directors, and managing agents of either Defendant.

Compl. ¶34.

Defendants move to compel arbitration.  Mot. [Dkt. No. 14].  The arbitration provision in the Enrollment Request Ortiz completed when enrolling her son provides, in part, that "**ANY DISPUTE ARISING FROM OR RELATED TO HEALTH PLAN MEMBERSHIP MAY BE DETERMINED BY SUBMISSION TO BINDING ARBITRATION, AND NOT BY A LAWSUIT OR RESORT TO COURT PROCESS EXCEPT AS CALIFORNIA LAW PROVIDES FOR JUDICIAL REVIEW**."  Lauderdale Decl., Ex. 1 (emphasis in original).  [Dkt. No. 14-2].  Ortiz's Evidence of Coverage ("EOC") sets out the terms of her coverage and also

2

1  contains a section titled "Binding Arbitration" which states, in part, that: "Binding arbitration is

2  the final process for resolving any disputes between Interested Parties arising from or related to

3  HMO coverage, whether stated in tort, contract or otherwise."  Compl., Ex. B at 52.  I heard

4  argument on December 16, 2015.

**LEGAL STANDARD**

6  The Federal Arbitration Act ("FAA") governs the motion to compel arbitration.  9 U.S.C.

7  §§ 1 *et seq.*  Under the FAA, a district court determines (1) whether a valid agreement to arbitrate

8  exists and, if it does, (2) whether the agreement encompasses the dispute at issue.  *Lifescan, Inc. v.*

9  *Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).  "To evaluate the validity of

10  an arbitration agreement, federal courts should apply ordinary state-law principles that govern the

11  formation of contracts."  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003)

12  (citation omitted).  If the court is satisfied "that the making of the arbitration agreement or the

13  failure to comply with the agreement is not in issue, the court shall make an order directing the

14  parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.

15  "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."

16  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

**DISCUSSION**

18  Defendants contend that Ortiz is required to arbitrate her claim pursuant to the arbitration

19  provisions in the Enrollment Request and EOC because it "arises from" or "relates to" her "HMO

20  coverage" and "Health Plan membership."  Mot. at 2.  Ortiz makes three primary arguments in

21  opposition: (1) Aetna California's arbitration provision violates ERISA; (2) she did not agree to

22  arbitrate her claims; and (3) Aetna Inc. is not a party to any agreement and thus cannot enforce

23  arbitration.

24  **I.      WHETHER ARBITRATION OF STATUTORY CHALLENGES VIOLATES**

25  **ERISA**

26  **A.      29 C.F.R. § 2560.503-1**

27  29 C.F.R. § 2560.503-1(a) "sets forth minimum requirements for employee benefit plan

28  procedures pertaining to claims for benefits by participants and beneficiaries."  29 C.F.R. §

United States District Court
Northern District of California

3

1   2560.503-1.  The claims procedures of a group health plan will be deemed to be "reasonable" only

2   if they comply with a series of procedural requirements.  29 C.F.R. § 2560.503-1(c).  Those

3   requirements include that "[t]he claims procedures do not contain any provision for the mandatory

4   arbitration of adverse benefit determinations, except to the extent that the plan or procedures

5   provide that: (i) [t]he arbitration is conducted as one of the two appeals described in paragraph

6   (c)(2) of this section and in accordance with the requirements applicable to such appeals; and (ii)

7   [t]he claimant is not precluded from challenging the decision under section 502(a) of the Act or

8   other applicable law."  29 C.F.R. § 2560.503-1(c)(4).  Ortiz contends that defendants' arbitration

9   agreement violates this provision because it requires arbitration after internal appeals are

10  exhausted.  Opp. at 6 [Dkt. No. 21].  But as defendants correctly point out, 29 C.F.R. § 2560.503-

11  1, as highlighted by the first words in subdivision(c), applies only to the plan's "claims

12  procedures" that defendants define as the "administrative procedures that a plan fiduciary uses in

13  conducting its own review of a claim."  Reply at 5 [Dkt. No. 22].

14          A plain reading of 29 C.F.R. § 2560.503-1(c)(4) indicates that the limitations on

15  arbitrability apply only to "claims procedures" and "provision[s therein] for the mandatory

16  arbitration of adverse benefit determination."  29 C.F.R. § 2560.503-1(c)(4).  The Department of

17  Labor explains that subsection (c)(4) "provides that a plan may require arbitration as one (or both)

18  of the permitted levels of review of a denied claim."  Rules and Regulations for Administration

19  and Enforcement; Claims Procedure, 65 Fed. Reg. 70246-01 (November 21, 2000) (codified at 29

20  C.F.R. pt. 2560).  Ortiz's complaint does not directly concern the adverse benefit determination

21  regarding her son's therapy that she has already appealed twice, once internally through Aetna

22  California and thereafter through the California Department of Managed Health Care.  Compl.

23  ¶¶30, 31.  Instead, as Ortiz asserts in her papers, her claims concern "defendants' violations of

24  ERISA and the parallel California statute."  Opp. at 11.  Accordingly, because 29 C.F.R. §

25  2560.503-1(c) applies to the administrative claims procedure that a plan uses to conduct reviews

26  of claims determinations, not the process through which statutory challenges should be litigated

27  after all administrative appeals have been exhausted, it is inapplicable to her claims.

28          The cases on which Ortiz relies do not provide support for her interpretation that the

4

regulations bar arbitration after the claim procedures have been completed.  All four cases involve the arbitrability of adverse benefits decisions.  *See Snyder v. Federal Insurance Co.*, No. 08-cv-153, 2009 WL 700708, at *5 (S.D. Ohio Mar. 13, 2009); *Sosa v. PARCO Oilfield Services, Ltd.*, No. 05-cv-153, 2006 WL 2821882, at *1 (E.D. Tex. Sept. 27, 2006); *Williams v. Ass'n De Prevoyance Interentreprises*, No. 11-cv-1664, 2012 WL 1752687, at *1 (E.D. La. May 16, 2012); *Coleman v. Supervalu, Inc. Short Term Disability Program*, 920 F. Supp. 2d 901, 903 (N.D. Ill. 2013).  For example, in *Snyder*, the plaintiff sued under 29 U.S.C. § 1132 to enforce her alleged right to an arbitration of her benefits claim under the ERISA-governed plan.  2009 WL 700708, at *5.  Consideration of 29 C.F.R. § 2560.503-1, which the court repeatedly described as "regarding the arbitration of adverse benefits decisions," was therefore appropriate.  *Id*. at *5 (referring to 29 C.F.R. § 2560.503-1(c)(4)); *see also Id.* ("[T]he Secretary of Labor has promulgated a regulation prescribing the procedures that a plan provider must follow, after an adverse benefit decision, to provide a full and fair review of the decision.").  Unlike the plaintiffs in those cases, Ortiz is not challenging her adverse benefits determination.  Therefore, the limitations promulgated in the regulations are inapplicable.

Ortiz also asserts Aetna California "intentionally seeks to limit the claimant from challenging the decision under section [502(a)] of [ERISA]" in violation of 29 C.F.R. § 2560.503-1(c)(4)(ii).  Opp. at 6.  However, defendants' arbitration agreement does not prohibit Ortiz from challenging that section in arbitration.  The Supreme Court has rejected the idea that arbitration of a claim is akin to having no claim at all.  *See e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."); *Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 229-30 (1987) (hereinafter "*McMahon*"). There is nothing in the record before me to indicate that the arbitral system would not provide Ortiz with all of the full and fair rights to which she is entitled under ERISA.  *See Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 121 (2d Cir. 1991) (agreeing with appellees that there was "no reason why the substantive rights guaranteed by ERISA will be jeopardized if the arbitration agreement is enforced.").

United States District Court
Northern District of California

**B. ERISA's Statutory Provisions**

Ortiz relies heavily on *Graphic Communications Union, District Council No. 2, AFL-CIO v. GCIU-Employer Retirement Benefit Plan*, 917 F.2d 1184 (9th Cir. 1990) to argue that an ERISA plaintiff who has exhausted her administrative remedies and whose claims arise because of an ERISA violation does not have to arbitrate her claims.  Opp. at 9-10.  In *Graphic*, an employee benefit plan sought to enforce an arbitration provision contained within the plan documents. Plaintiff, a union, challenged the plan administrator's interpretation of special vesting rules. *Graphic*, 917 F. 2d at 1185.  The union declined to appeal the plan administrator's decision to arbitration and instead filed suit in federal court.  *Id.*

According to the *Graphic* court, "the fundamental question here is whether the claim the [u]nion seeks to assert arises under the employee benefit plan or under ERISA." *Id*. at 1188 (citing *Amaro*, 724 F.2d at 748, 751 (adherence to an "agreement [which] mandate[d] final and binding arbitration of contractual disputes" was not required because the disputed issue was "solely ... an alleged violation of a protection afforded by ERISA")).  The Ninth Circuit ultimately held that "because the underlying disputed question here… arises under the plan, ERISA does not forbid enforcement of an agreement to arbitrate the question."  *Id.*  Ortiz seeks to rely on the court's distinction between claims arising out of ERISA versus the benefits plan to argue that "arbitration isn't required where –as here—the ERISA participant challenges the defendants' violation of the ERISA statute itself, as opposed to an ERISA plan provision."  Opp. at 1.

*Graphic*'s applicability is called into question by more recent Ninth Circuit decisions.  As the court pointed out in *Chappel v. Lab. Corp. of Am*., 232 F.3d 719, 725 n.4 (9th Cir. 2000), the provision at issue in *Graphic* "was not governed by the FAA and therefore did not consider the pro-arbitration policy of the FAA."[1]  Furthermore, in an even more recent decision, the Ninth Circuit recognized that "in the past, [it has] expressed skepticism about the arbitrability of ERISA claims, *see Amaro v. Cont'l Can Co*., 724 F.2d 747, 750 (9th Cir.1984), but those doubts seem to have been put to rest by the Supreme Court's opinions in [*McMahon*, 482 U.S. at 226] and

---

[1] Defendants assert, and Oritz does not dispute, that the FAA governs this case.

United States District Court
Northern District of California

1    [*Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 481 (1989)]." *Comer v.*

2    *Micor, Inc.*, 436 F.3d 1098, 1100 (9th Cir. 2006).  Citing *Graphic* as an example, the Ninth Circuit

3    stated that "[c]uriously," it has "echoed the doubts expressed in *Amaro* without taking account of

4    the intervening Supreme Court cases." *Id*.  I will not make the same mistake.

5         The Supreme Court has declared that the FAA "was intended to reverse centuries of

6    judicial hostility to arbitration agreements." *McMahon*, 482 U.S. at 225 (internal quotation marks,

7    citations, and modifications omitted).  The "duty to enforce arbitration agreements is not

8    diminished when a party bound by an agreement raises a claim founded on statutory rights." *Id*. at

9    226; *see also Mitsubishi Motors Corp.*, 473 U.S. at 626 ("There is no reason to depart from these

10   guidelines [favoring arbitration] where a party bound by an arbitration agreement raises claims

11   founded on statutory rights."); *Comer*, 436 F.3d at 1100-01 ("In fact, on the force of *McMahon*,

12   we have held other statutory claims arbitrable.").  Congress may override the presumption

13   favoring arbitration agreements by a contrary congressional command.  *McMahon*, 482 U.S. at

14   226; *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (The FAA requires "courts to

15   enforce agreements to arbitrate according to their terms," "even when the claims at issue are

16   federal statutory claims, unless the FAA's mandate has been overridden by a contrary

17   congressional command.") (internal citations and quotation marks omitted).  The burden of

18   demonstrating congressional intent to preclude waiver rests on the party opposing arbitration.

19   *McMahon*, 482 U.S. at 227; *Rodriguez de Quijas*, 490 U.S. at 483.  Applying these standards, the

20   Supreme Court has upheld arbitration agreements involving various statutory claims.  *See, e.g,*

21   *Rodriguez de Quijas*, 490 U.S. at 483 (claims under the Securities Act of 1993); *Mitsubishi*

22   *Motors Corp*, 473 U.S. at 640 (claims under the Sherman Antitrust Act).

23        Ortiz urges me to find that Congress overrode the FAA because ERISA seeks "to

24   protect…participants in employee benefit plans and their beneficiaries…by providing for

25   appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b).

26   This evidence is insufficient to constitute a clear congressional command to the contrary.  *See*

27   *CompuCredit*, 132 S. Ct. at 669; *see also Jasso v. Money Mart Exp., Inc.*, 879 F. Supp. 2d 1038,

28   1045 (N.D. Cal. 2012) ("*CompuCredit* holds that, absent a clear statement in a federal statute

1   showing Congressional intent to override the use of arbitration, in the FAA prevails.").  "It does

2   not follow that by permitting a federal judicial forum Congress also intended to override the

3   [FAA's] aim of ensuring the enforcement of privately made agreements in which parties have

4   chosen to forego an available judicial forum in favor of arbitration." *Bird*, 926 F.2d at 120

5   (internal citations, quotation marks, and modifications omitted).  "It is utterly commonplace for

6   statutes that create civil causes of action to describe the details of those causes of action, including

7   the relief available, in the context of a court suit." *CompuCredit*, 132 S. Ct. at 670.  However, the

8   "mere formulation" of the cause of action is insufficient to establish "contrary congressional

9   command" overriding the FAA.  *Id.*

10        In line with courts across the country, including within this circuit, I find that 29 U.S.C. §

11   1001(b) does not provide the requisite congressional command necessary to override the FAA. [2]

12   *See, e.g., Bird*, 926 F.2d at 120 (holding that 29 U.S.C. § 1001(b) "does not speak to whether

13   Congress to require that parties avail themselves of that forum."); *Arnulfo P. Sulit, Inc. v. Dean

14   Witter Reynolds, Inc.*, 847 F.2d 475, 478 (8th Cir. 1988) (not persuaded that Congress "intended

15   affirmatively to prevent waiver of the judicial forum for ERISA dispute resolution" by allowing

16   "ERISA plaintiffs ready access to the federal courts if they choose to sue."); *Fabian Fin. Servs. v.

17   Kurt H. Volk, Inc. Profit Sharing Plan*, 768 F. Supp. 728, 732 (C.D. Cal. 1991) ("[S]ection

18   1001(b) fails to support plaintiff's argument that claims arising under ERISA cannot be submitted

19   to arbitration.").

20   **II.      WHETHER ORTIZ AGREED TO ARBITRATE HER CLAIMS**

21        Ortiz argues that "she (and not her minor autistic son) is the plaintiff here" and therefore to

22   _____

23   [2] At the hearing, Ortiz's counsel directed my attention to *McLeod v. Gen. Mills, Inc.*, No. 15-cv-
     494, 2015 WL 6445672 (D. Minn. Oct. 23, 2015).  In *McLeod*, the Minnesota district court

24   interpreted the Older Workers Benefit Protection Act of 1990 ("OWBPA") to find that the
     inclusion of a provision that provided "the party asserting the validity of a waiver **shall** have the

25   burden of proving in a court of competent jurisdiction that a waiver was knowing and voluntary"
     demonstrated that a party seeking to enforce the arbitration agreement had to defend the validity of

26   the agreement in court, not in arbitration.  2015 WL 6445672, at *8 (emphasis in original).
     However, the court's conclusion was limited by the "narrow circumstances presented in this case:

27   a dispute over the validity of a waiver of substantive claims under the OWBPA's waiver
     requirements found in Section 626(f)(1)."  *Id.*  Because the case at bar does not involve the

28   OWBPA, Ortiz does not point to comparable language in the ERISA statute, and multiple courts
     have interpreted 29 U.S.C. § 1001(b) to find it amenable to arbitration, *McLeod* is unpersuasive.

United States District Court
Northern District of California

the "extent that the [signed Enrollment Request] is enforceable, it is enforceable – by its terms – only against the minor son, and not against [Ortiz]." Opp. at 11.  Additionally, while her employer agreed to arbitrate though the EOC, she did not.  *Id*.

As defendants point out, the Enrollment Request,  through which she requested to add her dependent child, was signed by Ortiz herself (not her son).  Dkt. No. 14-2.  By signing she affirmed that "[o]n behalf of myself and the dependents listed," the "plan documents [including the EOC] will determine the rights and responsibilities of member(s)."  *Id*.  The EOC, in turn has an arbitration provision which provides that "[b]inding arbitration is the final process for resolving any disputes between Interested Parties arising from or related to HMO coverage."  Compl., Ex. B at 52.  Additionally, the signed Enrollment Request states that she "understand[s] that [she] is giving up the constitutional right to have disputes decided in a court of law before a jury, and instead accepting the use of binding arbitration."  Dkt. No. 14-2.

Ortiz's argument that she is not bound by the EOC is unsubstantiated.  Citing *Comer,* Ortiz contends that she cannot be held to EOC's arbitration agreement because she does not "knowingly exploit[] the agreement containing the arbitration clause" because her claims are not premised on enforcing the plan.  Opp. at 11(citing *Comer*, 436 F. 3d at 1101).  But this argument contradicts allegations present throughout her complaint, including the assertion that she "brings this action under ERISA to… enforce her son's rights under [defendants'] benefit plan" and "because this policy affects all of its insureds (a) with autism (b) who seek coverage for ABA treatment," she also brings the action on behalf of a putative class.  Compl. ¶8; *see also* Compl. ¶¶ 24-25 (quoting the EOC to define what is "medically necessary" under the policy).  Moreover, *Comer* involved a contract the plaintiff "didn't sign and is not even entitled to enforce."  436 F.3d at 1102.  Here, Ortiz cannot rely on a contract she signed that incorporated the EOC "while simultaneously attempting to avoid the burdens that contract imposes."  *Id*. at 1101.

## III.    WHETHER AETNA INC. CAN ENFORCE THE ARBITRATION AGREEMENT

Ortiz argues that the arbitration agreement controls disputes concerning "Interested Parties," which the EOC defines as "Contract Holder Members, their heirs-at-law or personal representatives(s) of a Member, a Participating Provider and HMO, including affiliates, agent,

1   employees or subcontractors of an Interested Party." Compl., Ex. B at 2. Ortiz claims that

2   because "HMO" is specifically defined and limited to Aetna California, Compl., Ex. B. at 66,

3   Aetna Inc. is a "non-party to the agreement and cannot enforce it." Opp. at 12.

4          Ortiz's limited reading of the agreement ignores that the arbitration provision applies to

5   HMO *affiliates* as well. Affiliate, as defined by Black's Law Dictionary, is a "corporation that is

6   related to another corporation by shareholdings or other means of control; a subsidiary, parent or

7   sibling corporation." Black's Law Dictionary (10th ed.). Ortiz acknowledges that Aetna Inc. is

8   the corporate parent of Aetna California in both her complaint and brief. Compl. ¶18 ("Defendant

9   Aetna Health of California, Inc. is an incorporated subsidiary of Aetna Inc."); Opp. at 2 ("Co-

10  defendant Aetna Inc. is the corporate parent of Aetna Health of California, Inc."). Accordingly,

11  Aetna Inc. is an "Interested Party" within the definition provided in the EOC and can enforce the

12  agreement.

13                                **CONCLUSION**

14         Ortiz's agreement with Aetna requires arbitration. Defendants' motion to compel

15  arbitration is GRANTED.

16         **IT IS SO ORDERED**.

17  Dated: December 22, 2015



18  _____

19  WILLIAM H. ORRICK
    United States District Judge

20

21

22

23

24

25

26

27

28

*United States District Court*
*Northern District of California*